113 So.2d 194

Viola WOMACK, as Executrix, etc.

v.

FIRST NATIONAL BANK OF GUNTERSVILLE.

8 Div. 962.

Supreme Court of Alabama.

May 21, 1959.

Rehearing Denied June 25, 1959.

Jas. H. Countryman, Attalla, for appellant.

Lusk & Lusk, Guntersville, for appellee.

MERRILL, Justice.

This is an appeal from two orders of the Circuit Court of Marshall County. The first order was entered on August 30, 1958, and was an order made pursuant to Tit. 7, § 1179, Code 1940, interpleading Mary Cox against the plaintiff, Viola Womack, as executrix of the last will and testament of Lemuel Cephen Lewellen, and discharging from liability The First National Bank of Guntersville. The second order was entered on September 26, 1958, and was an order overruling Viola Womack's amended

motion to set aside the order of August 30th.

Since the pleadings are numerous and there are many judgment entries, we list the pertinent ones chronologically:

October 23, 1957—Lemuel Cephen Lewellen, the original plaintiff, filed a two count complaint in general assumpsit against The First National Bank of Guntersville for $3,000 had and received and demanded a trial by jury.

October 25—Mary L. Cox filed a three count complaint against the bank for the same sum of money.

October 26—The First National Bank of Guntersville filed a sworn interpleader against Lemuel Cephen Lewellen alleging that it was the defendant in the original suit; that on August 27, 1956, there was deposited with it the sum of $3,000 to the account of Mary Cox and Lemuel Cephen Lewellen; that on October 10, 1957, James H. Countryman [attorney of record for appellant, Viola Womack] presented to defendant a ·power of attorney purporting to have been executed by Lem Allen and authorizing James H. Countryman to withdraw all money on joint account with Mary Cox at the defendant bank, and that the defendant refused to pay over the $3,000 to James H. Countryman. The interpleader further alleged that on or about October 11, 1957, and again on or about October 14, 1957, Mary Cox, not a party to the original suit and without collusion with the bank, demanded of the bank that she be allowed to withdraw the money, which demand was also refused by the bank. The interpleader then tendered the fund into court and therewith deposited the $3,000 with the clerk of the circuit court, praying that an order be issued to Mary Cox causing her to come in and defend the action.

October 28—The First National Bank of Guntersville filed an interpleader against Mary Cox, averring, inter alia, that Mary Cox had demanded payment of the sum; that Lemuel Cephen Lewellen, without collusion with the bank, also demanded the fund, and praying that an order be issued requiring him to come in and defend the action.

November 13—Lemuel Cephen Lewellen filed a seven ground demurrer to the bank's interpleader as against him. It does not appear from the record that these demurrers were ruled on by the court.

November 21—Mary Cox filed a sworn answer and cross-complaint to the interpleader filed by the bank. In the unsworn part of her cross-complaint, Mary Cox avers that she is a cousin of Lem Allen, who is the same as the original plaintiff in the case, and that he lived in the home of claimant for many years. The cross-complaint further alleges that the original plaintiff gave the claimant, Mary Cox, the money in question requesting that claimant and he go to Guntersville, Alabama, and place the money in a bank. It is further averred that plaintiff had lost some money just prior to the trip to Guntersville and that he insisted that his name appear jointly with the claimant's, but that plaintiff's name be changed (from Lem Allen to Lemuel Cephen Lewellen) so that neither he nor Mary Cox would be molested in the enjoyment of said deposit. It avers further that the money was deposited in the savings account in the names of plaintiff and claimant, with the right of survivorship, and that the claimant has made demand on the bank for the money and has been refused.

November 25—Lemuel Cephen Lewellen amended his complaint to add three counts. One of the counts was for $1,000 damages for breach of contract in failing to pay the $3,000 to plaintiff's attorney and agent when properly demanded. Another count, appellant says, is for breach of trust, and the third count is for damages for negligently failing to pay the fund unto James H. Countryman.

November 29—The bank refiled its answer and interpleader to plaintiff's amended complaint.

December 11—Lemuel Cephen Lewellen filed demurrers to the cross-complaint filed by Mary Cox.

February 20, 1958—Viola Womack filed a motion to revive Lemuel Cephen Lewellen's suit in her name, showing that he had departed this life and that she had been appointed executrix of his last will and testament.

February 28—Judgment entry by the court sustaining demurrers of the appellant filed December 11, 1957, to the answer and cross-complaint of the claimant, Mary Cox.

March 10—Mary Cox filed an amendment to her cross-complaint averring, inter alia, that the money was deposited to the account of "Mary Cox and Mr. Lemuel Cephen Lewellen" whereas, the demand for withdrawal was made under a power of attorney allegedly executed by one "Lem Allen." The amendment further alleged that the purported power of attorney is invalid because of undue influence exercised by Luther Medline and other persons, not then known to Mary Cox, in that Lem Allen was a person of feeble health; that Luther Medline and the others being in a confidential relationship, having dominion and control over his person, took advantage of his condition and induced or aided him to put his mark on the alleged power of attorney. It was further averred that the mark of Lem Allen was not voluntary; that the power of attorney was executed by mistake and unintentionally, and that for many years, Lem Allen had lived in the same house with her and that she took care of and looked after him along with her mother. It was further stated that when Lem Allen was a young man he sustained an accident which caused him to be paralyzed and to lie flat on his back for a period of approximately eleven years, and that subsequent thereto and for approximately the next eleven years, he moved about and during this time he sold pencils and other minor articles on the streets of the City of Gadsden and the other municipalities in Etowah County and

apparently accumulated some monies. The amendment stated also that Lem Allen gave to the claimant the monies deposited in the bank and that he released all control in and to the money and that further, he gave his sister, Viola Womack, the home in which he resided.

March 13—Viola Womack filed a motion to produce, moving the court to order Mary Cox to produce the deposit slip.

Judgment entry by the court ordering the production of the deposit slip.

Viola Womack filed demurrers to cross-complaint of Mary Cox, as amended.

Judgment entry by the court sustaining demurrers of the appellant filed March 13, 1958, to the amended cross-complaint of the claimant, Mary Cox.

March 19—Mary Cox amended her claim averring that the fund in question has, at all times, been owned by her.

Viola Womack reassigned her original demurrers and demurs further to the cross-complaint of Mary Cox, as last amended.

August 12—The bank reassigned its answer and interpleader to the complaint, as last amended, on March 7, 1958.

August 16—Viola Womack filed a plea and answer to the bank's interpleader denying the averments of the interpleader that there was deposited with it "the sum of $3,000.00 to the account of Mary Cox and Mr. Lemuel Cephen Lewellen,"; but instead averred that the only contract existing between plaintiff's testator and the bank was one evidenced by the deposit slip as follows: "August 27, 1956 Mrs. Mary Cox and/or Mr. Lemuel Louellen, Attalla, Ala. 3000.00 Three thousand dollars. Payable to either or the survivor of either Dup. J. T. Sulzby VP 3000.00." The plea and answer then avers that under the terms and the conditions of the deposit, it was the bank's duty under §§ 128(2) and 128(2a), Tit. 5, Code 1940, as amended, to pay over to Viola Womack's testator the fund upon his demand without the consent or concurrence of Mary

Cox. It is further alleged that the proper demand was made on October 10, 1957. The plea and answer further denied that the bank was without collusion with Mary Cox and that the bank's interpleader was a device whereby the bank sought to escape liability for its breach of contract with plaintiff's testator. It alleged further that the bank prepared an erroneous ledger sheet which showed only a joint account between Mary Cox and the deceased, the legal import of which would be to make the money subject to withdrawal only upon the joint authority of both depositors and then only during their joint lives, and making the estate of the party dying first a tenant in common with the survivor. The plea and answer then alleged that the bank was without legal right to interplead and that before the filing of the original action and before the filing of the interpleader, the bank became aware of the true provisions of its contract with the deceased and of its error in substituting a different contract for the true one; but that it persisted in its refusal to comply with the terms of the contract and that, therefore, the defendant does not now stand indifferent toward the plaintiff and Mary Cox, the claimant, as is required by law as a condition precedent to the right to interplead.

August 22—Judgment entry by the court taking the cause under advisement in order to determine the sufficiency of the interpleader.

August 27—Mary L. Cox amended her complaint adding two counts. One count was for breach of contract and the other was for negligence in failing to pay the money to Mary L. Cox upon proper demand.

August 30—Judgment entry by the court consolidating the case of Mary L. Cox v. The First National Bank of Guntersville and the case of Lemuel Cephen Lewellen v. The First National Bank of Guntersville.

Judgment entry by the court noting the consolidation of the two cases and noting the bank's interpleader, concluding that a proper case for interpleader was presented and ordering that Mary Cox be sustituted as a party in the suit in place of the original defendant, and discharging the bank from liability to the original plaintiff and his successor, Viola Womack, as executrix, and to the substituted defendant, Mary Cox. The judgment entry further provided that the bank go hence with its costs.

September 10—Viola Womack filed a motion to set aside the judgment of August 30, interpleading Mary Cox. Some of the grounds assigned by the motion were that the judgment discharging the defendant bank from liability to the plaintiff is a collateral attack upon her right to litigate the breach of contract and the negligence of the bank and, hence, is a denial of her right to due process of law as provided in Article I, §§ 10 and 13, Constitution of Alabama 1901; that the judgment consolidating the two cases is contrary to law; that the defendant bank has not met its burden of proof in showing that it is a disinterested party and, therefore, entitled to an interpleader, and that defendant either willfully or innocently altered its records to show a joint account only thereby working a fraud on plaintiff. The motion further stated that defendant failed to come into court with clean hands in that when Mary Cox demanded payment and showed the bank the original deposit slip, the bank then became aware of the contract between plaintiff's intestate and the bank, notwithstanding an innocent error in its records and, at that time, came under a duty to so inform the testator or his attorney, which it did not do. Further, the motion stated that there was pending in the suit an unanswered plea denying the allegations of the petition of interpleader, which allegations formed the basis of the defendant's right to interplead, and, therefore, the order of interpleader was erroneous.

September 16—Viola Womack filed an amendment to her motion to set aside the judgment of August 30, ordering the interpleader, assigning four additional grounds. The amendment alleged that the judgment of interpleader was prematurely rendered

because plaintiff's plea and answer to the interpleader was unanswered and that, therefore, the cause was not at issue. It further stated that the judgment of interpleader had interrupted and terminated the due and orderly process of pleading and that there is pending in the cause plaintiff's amended complaint alleging a liability independent of defendant's right to interplead, and that the issues raised therein could not be determined by a judgment of interpleader discharging the bank from interpleader.

September 26—Judgment entry entered by the court overruling Viola Womack's amended motion to set aside the court's previous order of interpleader.

■ We have held that the denial of a petition for interpleader, under Tit. 7, § 1179, Code 1940, is such a final judgment as will support an appeal. Commercial Savings Bank & Trust Co. v. A. Z. Bailey Grocery Co., 203 Ala. 522, 84 So. 808. We have also affirmed a judgment allowing an interpleader and discharging the original defendant where the original plaintiff took an appeal and applied for an alternative writ of mandamus. Pratt v. First National Bank of Fayette, 243 Ala. 257, 9 So.2d 744. It follows, therefore, that the order in the instant case granting the interpleader and discharging The First National Bank of Guntersville will support an appeal.

Appellant argues that this is not a proper case for interpleader. But it is sufficiently similar in facts to the Pratt case and Perdue v. State National Bank, 254 Ala. 80, 47 So.2d 261, for the same legal principles to apply, and in both those cases this court held that an interpleader did lie. The Perdue case was a bill of interpleader in equity under Equity Rule 36, Code 1940, Tit. 7 Appendix, and not the statute, but our courts have held that the interpleader statute was designed to afford a more simple and convenient way for accomplishing the objects and purposes of a bill of interpleader in equity, the same principles governing both, and where a bill of interpleader in equity would not lie, statutory interpleader would not lie. Davis v. Douglass, 12 Ala.App. 581, 68 So. 528; Coleman v. Chambers, 127 Ala. 615, 29 So. 58; Greene v. Rolston, 226 Ala. 446, 147 So. 628. Appellant urges that the appellee was not free from fault in bringing on the controversy. But this court held in the Perdue case [254 Ala. 80, 47 So.2d 263] that the bank in that case presented a case for interpleader even though it declined to pay, pending an investigation, and that it "notified respondent Ellen Perdue of such requested payment, suggesting her consent to such payment," but instead Ellen Perdue demanded that the deposit be paid to her and became an adversary claimant.

The appellee, in the instant case, presented a case for interpleader under Tit. 7, § 1179, Code 1940, under the holdings in the Pratt and the Perdue cases. We said in the Pratt case:

"The terms of the statute, itself, should be kept in mind. Its express terms disclose the legislative intent. It looks to a convenient and speedy remedy in a special class of actions. The action must be on a contract for the payment of money. There must be no collusion between defendant and a third party claimant. This fact must be disclosed by affidavit and the money sued for paid into court. If claimant appears to claim the money, these facts make a case for interpleader unless other facts disclose it to be inequitable to permit defendant to thus remove himself from the litigation. The statute, in effect, declares it more fitting that any issue as to ownership of the fund sued for be litigated directly between the parties claimant; not by one ready and willing to pay it, but confronted with conflicting claims thereto, not due to any fault on his part, and under no duty to take sides in the real controversy.

"We are of opinion this case is within the terms, the spirit and purpose of the statute, and there was no error in

the ruling of the trial court." [243 Ala. 257, 9 So.2d 747.]

Appellant also argues that "even if it could be conceded that the appellee had the right to interplead, which is an action in the nature of an equitable proceeding, and allowed only in the case of an innocent stakeholder, how could that deprive the appellant of the right to have the question of the breach of a contract by the appellee tried in a court of law?"

Although there is nothing in the reported opinion of the Pratt case to so indicate, the original record in that case shows that the complaint contained counts for money had and received and for damages for breach of contract as does the amended complaint in the instant case. The first sentence of the statute, Tit. 7, § 1179, reads in part—"A defendant against whom an action is pending upon any contract for the payment of money may at any time before issue joined," seek an interpleader and if certain conditions are met, and when so, "the court must first determine whether it is a proper case of interpleader, and if so, must make an order that such person be substituted as a party to the suit in place of the defendant, and thereupon such person stands in the place of the defendant, and the latter is discharged from liability to the plaintiff and substituted defendant for the money sought to be recovered of him."

■ It, therefore, appears that since the original action must be on any "contract for the payment of money," the decision in the Pratt case should be construed as holding that where it is determined that a proper case for interpleader exists, the defendant "is discharged from liability to the plaintiff" whether the complaint be on the common counts, or action for breach of contract or tort. This is buttressed by the holding in the Perdue case. There, the original opinion held that the defendant bank "breached said contract and the duty growing out of said contract,—a tort [254 Ala. 80, 47 So.2d 263]," and that it was not a case for interpleader. But on rehearing, the majority held that the bill did present a case for interpleader under Equity Rule 36.

■ Under the authority of the Pratt and Perdue cases, we are constrained to hold that a case for interpleader was presented under the facts of the instant case. The decrees are due to be affirmed.

■ We note in passing that the correct procedure would have been to grant the interpleader and then consolidate the cases, rather than consolidate and then enter the order of interpleader as was done. But this did not result in any prejudice to the substantial rights of the appellant.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

LIVINGSTON, Chief Justice, remains of the opinion that the dissenting opinion in Perdue v. State National Bank, 254 Ala. 80, 47 So.2d 261, expresses the better view, but concurs on the ground that the majority holding in the Perdue case has set at rest the question in this jurisdiction, and the difference is not one of fundamental principle.